IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 12, 2002 Session Heard at Memphis

# STATE OF TENNESSEE v. JEREMY WHITE

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 00-04744-45 and 00-04746-47     Arthur T. Bennett, Judge**

_____

**No. W2001-02580-CCA-R9-CD  - Filed September 25, 2002**

_____

On May 2, 2000, a Shelby County Grand Jury indicted the appellant, Jeremy White, for attempt to commit first degree murder, especially aggravated robbery, especially aggravated burglary, and especially aggravated kidnapping. The appellant retained an attorney, Mark McDaniel, to defend him against the State's prosecution in the Shelby County Criminal Court. However, in addition to maintaining a private practice, McDaniel was a "part-time prosecutor" for the Town of Collierville in Shelby County. Accordingly, the State filed a motion to disqualify McDaniel from representing the appellant due to a conflict of interest. Following a hearing, the trial court granted the State's motion. From the trial court's order, the appellant now brings this interlocutory appeal. Having thoroughly reviewed the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Mark S. McDaniel, Memphis, Tennessee, for the appellant, Jeremy White.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee and Alanda Dwyer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

        In the early 1990s, the Town of Collierville, in Shelby County, Tennessee, through its Board of Mayor and Alderman, appointed attorney Mark S. McDaniel to prosecute crimes occurring in the Town of Collierville and heard in the Collierville Municipal Court. As noted by the State in its brief, the Judge of the Collierville Municipal Court is vested with concurrent jurisdiction and authority with courts of general sessions "in all cases of the violation or alleged violation of the criminal laws of this state within the limits of the municipality." Tenn. Code Ann. § 6-4-301(c)(1) (1998); see also Tenn. Const. Art. VI, § 4; Collierville, Tenn., Town Codes § 1-702 (1975); see also

Tenn. R. Evid. 201.  More specifically, the Collierville Town Codes provide:

> The [City Judge] . . . shall impose penalties within his discretion not to exceed five hundred dollars ($500.00) or sentence to the city jail or county workhouse for a maximum of 11 months and 29 days or both for violations of the city charter or ordinances, or for violations of state misdemeanors committed within the police jurisdiction of the Town.  The City Judge may bind over to the Shelby County Grand Jury any person being tried in the city court for an offense, if, in his judgment, the person has probably committed a felony.

Collierville, Tenn., Town Codes § 1-704 (1975).

For the limited purpose of conferring authority upon McDaniel to prosecute state law violations before the Collierville Municipal Court in addition to municipal ordinance violations, the District Attorney General for Shelby County appointed McDaniel to serve as his assistant.  Tenn. Code Ann. § 8-7-103(1) (1993 & Supp. 2001).  Accordingly, McDaniel was sworn in as an assistant district attorney general before Judge Chris Craft in the Shelby County Criminal Court.  Notwithstanding his title of assistant district attorney general, McDaniel is compensated for his services as a part-time prosecutor solely by the Town of Collierville.

While prosecuting cases in the Collierville Municipal Court on behalf of both the State and the Town of Collierville, McDaniel has continued to engage in the private practice of law, including representing criminal defendants in the Shelby County General Sessions and Criminal Courts.  As a criminal defense attorney, however, he does not "handle any state related cases involving criminal defendants that originate in the Town of Collierville."  Also, he does not "accept representation of a criminal defendant if the case involve[s] a witness or witnesses that [he] ha[s] previously interacted [with] in [his] capacity as a prosecutor."

The appellant retained the services of McDaniel in the instant case in November 1999.  Subsequently, on July 9, 2001, the Board of Professional Responsibility of the Supreme Court of Tennessee (hereinafter the Board) issued Advisory Ethics Opinion No. 2001-A-742 concerning the "propriety of part-time Assistant District Attorneys' representation of criminal defendants within the same judicial district."  The Board concluded that such representation is ethically inappropriate.[1]  On the basis of this advisory opinion, on August 29, 2001, the State submitted its motion to disqualify McDaniel as appellant's counsel.  The trial court conducted a hearing on the State's motion on October 2, 2001.

At the October 2 hearing, McDaniel disputed the binding authority of the Board's advisory opinion and further argued that his title of assistant district attorney general is a mere formality.  McDaniel explained that his appointment as an assistant district attorney general

---

[1] Subsequently, the Board filed Formal Ethics Opinion 2001-F-107(b) and Formal Ethics Opinion 2002-F-146.  McDaniel and other part-time assistant district attorneys general have filed a petition in the Tennessee Supreme Court asking that the court review and set aside the Board's opinions.

was for liability purposes in order to protect me the acts that I did on behalf of the Town of Collierville dealing with issues involving the State of Tennessee that I would be immuned [sic] from civil liability. That was the basis for it. It was for insurance purposes. It wasn't for any other reason. That was the information at least I had at the time.

McDaniel emphasized that he did not share office facilities with any member of the District Attorney General's office. He also noted that, in performing his duties as a part-time prosecutor for the Town of Collierville, he only infrequently encountered members of the Shelby County Sheriff's Department. Indeed, he asserted that, during his nine-year tenure as a part-time prosecutor, only one of his prosecutions had involved a Shelby County Sheriff's Deputy; the remaining prosecutions "almost exclusively involve[d] Collierville police officers."

Additionally, the appellant confirmed at the October 2 hearing that he was aware of McDaniel's position as a part-time assistant district attorney general. He nevertheless affirmed his desire that McDaniel continue to represent him in this case, noting that his defense would be prejudiced by McDaniel's removal. He remarked, "[F]or a whole two years, [McDaniel has] been with my case, with me and he's more comfortable with my family. It would take an additional time for [a] new lawyer to look at this case and look - - look at what's going on."

The trial court concluded that McDaniel's position as a part-time assistant district attorney general while simultaneously defending the appellant against the State's prosecution in the Shelby County Criminal Court created, at a minimum, a "perceived" conflict of interest. Specifically, the trial court observed:

First, this court finds there is a close relationship between the Collierville City Prosecutor and the Shelby County Sheriff's Department. Statements made by both the state and the defense counsel at the hearing on this matter indicated that the defense counsel, Mark McDaniel, acting as the prosecutor for the City of Collierville, was sworn in before the Shelby County Criminal Court Judge Chris Craft and took the oath of office as an Assistant Shelby County District Attorney, specially appointed to act as a Collierville city prosecutor. As such, Mr. McDaniel is authorized, in his role as a city prosecutor, to prosecute violations of the municipal and county laws as well as the state criminal codes. In pursuit of such prosecutions, it is likely that the city prosecutor will have regular contact with the Shelby County Sheriff's Department. Thus, this court finds that in addition to the actual link between the two offices, the likely perception of the community is that the prosecutor for the City of Collierville is in actuality a representative of the Shelby County District Attorney's Office and acts with authority from the Shelby County District Attorney. Finally, this court finds that in the instant case, the defendant is clearly being prosecuted by Shelby County officials. Here, the defendant is charged with a crime,

3

committed in Shelby County, likely investigated by Shelby County Sheriff's Deputies and prosecuted by the Shelby County District Attorney's office. Moreover, his counsel of record is an employee of the division of government which seeks to prosecute and punish him for his alleged criminal actions.

Therefore, this court finds that, even if the above facts do not give rise to an actual conflict of interest, the State has met its burden of proving that a perceived conflict of interest exists.
. . . .
[A] city prosecutor . . . is actually engaged in the criminal process . . . and . . ., in the course of performing [his] duties, may act in conjunction with County law enforcement officials to prosecute alleged criminal violations. . . . [T]o allow an attorney, acting under such authority, to represent a criminal defendant charged with a crime in Shelby County creates a conflict of interest not only with regard to the defendant's right to fair and impartial representation, but also with regard to the State's interest. As an employee of the Shelby County District Attorney's office, Mr. McDaniel, has a duty to the citizens of Shelby County not to actively represent conflicting interests. Thus, even if the defendant could waive the conflict, as he claims he wishes to do, the state is not required to comply with such waiver and cannot be compelled to effectively relinquish their right to object to the conflict of interest created when one of their members actively represents an opposing party.
. . . .
Finally, this court notes that the defendant indicated that he felt he would be prejudiced if he was forced to retain new counsel at this stage of the proceedings. This court also finds this argument to be unpersuasive. The defendant will be given adequate opportunity to retain new counsel and the defendant's new attorney will be given sufficient time to prepare for trial. Thus, this court finds the defendant is not prejudiced by requiring his present counsel to withdraw, but rather finds the defendant's rights to a fair and impartial representation will be fostered by the removal of Mr. McDaniel.

Pursuant to Tenn. R. App. P. 9, the appellant requested the trial court's permission to appeal its order disqualifying McDaniel. The trial court granted the appellant's motion, and this court followed suit in order to address whether McDaniel's dual roles as part-time assistant district attorney general and defense counsel created a conflict of interest.

## II. Analysis

4

On appeal, the appellant rests his claim of error largely upon his qualified right under the Sixth Amendment to the United States Constitution to select and be represented by his preferred attorney. Specifically, the appellant asserts that only an actual conflict of interest will justify the infringement of this qualified right, and the State failed to meet its burden of proof in this regard. Moreover, the appellant asserts that he "knowingly and voluntarily waive[d] any perceived conflict of interest." The State responds that the mere appearance of impropriety warrants McDaniel's disqualification from representing the appellant.

## A. Right to Counsel

The Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Tennessee Constitution guarantee a defendant in state criminal prosecutions the assistance of counsel. Gideon v. Wainwright, 372 U.S. 335, 342, 83 S. Ct. 792, 795 (1963); State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984). Moreover, "a criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" State v. Thomas Dee Huskey, No. E2002-00030-CCA-R10-CD, 2002 Tenn. Crim. App. LEXIS 265, at *10 (Knoxville, Mar. 26, 2002) (quoting Powell v. Alabama, 287 U.S. 45, 53, 53 S. Ct. 55, 58 (1932)). "'[O]nce counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of that counsel at trial.'" Id. at *15 (quoting English v. State, 259 A.2d 822, 826 (Md. Ct. Spec. App. 1969)).

That having been said, the United States Supreme Court has further observed, "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988). Thus, applying both the federal and state constitutions, we have concluded that "[t]he right to be represented by counsel of one's choice is qualified and 'must be balanced against the requirements of the fair and proper administration of justice.'" Huskey, No. E2002-00030-CCA-R10-CD, 2002 Tenn. Crim. App. LEXIS 265, at *11 (quoting United States v. Micke, 859 F.2d 473, 480 (7th Cir. 1988)).

Circumstances that demand the removal or disqualification of counsel in the interest of justice, notwithstanding the implication of the defendant's right to counsel, include, at a minimum, an attorney's actual conflict of interest. Id. at **16-17 (citing Wheat, 486 U.S. at 164, 108 S. Ct. at 1700, and State v. Thompson, 768 S.W.2d 239, 245 (Tenn. 1989)); see also State v. Parrott, 919 S.W.2d 60, 61 (Tenn. Crim. App. 1995); cf. State v. Oody, 823 S.W.2d 554, 558 (Tenn. Crim. App. 1991). Indeed, the Supreme Court unambiguously stated in Wheat, 486 U.S. at 159, 108 S .Ct. at 1697, that a criminal defendant may not "insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." Correspondingly, the Court noted in Wheat that, even assuming a waiver of any conflict by all affected parties, "courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. at 160, 108 S. Ct. at 1698; see also Kevin Burns v. State, No. W2000-

02871-CCA-R9-PD, 2001 Tenn. Crim. App. LEXIS 625, at **11-12 (Jackson, Aug. 9, 2001).

## B. Conflicts of Interest
### i. Standard of Review

Again, the trial court in this case concluded that, at a minimum, McDaniel's position as a part-time assistant district attorney general while simultaneously defending the appellant against the State's prosecution in the Shelby County Criminal Court created a "perceived" conflict of interest requiring McDaniel's disqualification. On appeal, we will overturn a trial court's ruling on attorney disqualification only upon finding an abuse of discretion. Clinard v. Blackwood, 46 S.W.3d 177, 182 (Tenn. 2001). An abuse of discretion occurs when a trial court "'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" Id. (quoting State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)). Because we conclude that McDaniel's dual roles as part-time prosecutor and defense counsel created an actual conflict of interest, we need not address whether any "perceived" conflict warranted disqualification.

### ii. Actual Conflict of Interest

Tenn. Sup. Ct. R. 8, DR 5-105 specifically provides:

(B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extend permitted under DR 5-105(C).

(C) In the situation[] covered [above], a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

See also Tenn. Sup. Ct. R. 8, EC 5-1 ("The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties."). Echoing this disciplinary rule, our supreme court has observed in turn that "an actual conflict of interest . . . includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" State v. Culbreath, 30 S.W.3d 309, 312 (Tenn. 2000) (citation omitted). In other words, "[a]n actual conflict of interest is usually defined in the context of one attorney representing two or more parties with divergent interests. . . . The term has been described as a 'situation in which regard for one duty tends to lead to [the] disregard of another.'" State v. Tate, 925 S.W.2d 548, 552-552 (Tenn. Crim. App. 1995) (citation omitted); see also Bryan Hanley v. State, No. M2000-02182-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 898, at *9 (Nashville, Nov. 16, 2001), perm. to appeal denied, (Tenn. 2002).

6

The appellant in this case argues that our supreme court's decision in State v. Jones, 726 S.W.2d 515 (Tenn. 1987), precludes any conclusion that McDaniel's dual roles as prosecutor and defense counsel created an actual conflict of interest. In Jones, the supreme court rejected the blanket proposition that a conflict of interest, actual or apparent, necessarily inheres in an attorney's representation of a criminal defendant in a county in which the attorney is employed as the partner of the county attorney. Id. at 520; see also Demarcus Sheriff Smith v. State, No. W2001-01353-CCA-R3-PC, 2002 Tenn. Crim. App. LEXIS 189, at **6-11 (Jackson, Mar. 8, 2002), perm. to appeal dismissed, (Tenn. 2002). In light of the distinction between the roles of a county attorney and a state prosecutor, however, we disagree that the decision in Jones constitutes controlling authority in this case.

Rather, we are persuaded by the logic of the Board's recently issued Formal Ethics Opinion 2002-F-146 that "[t]he duties of a state prosecutor or assistant and such lawyer's duties as criminal defense counsel in a state court are clearly in conflict." In this regard, the Board observed that "[p]rosecutors have taken an oath of office to uphold and apply state law in prosecutions and assist municipal, county, and state law enforcement officers in prosecuting alleged crime;" representation of criminal defendants, on the contrary, requires challenging the very laws the prosecutor is charged to enforce and requires vigorously cross-examining or otherwise challenging the testimony of law enforcement personnel. Id. Moreover,

> [e]ven if cross-examination of such personnel would not involve the disclosure of confidences and secrets of the state or municipality, the desire to maintain a harmonious working relationship with these law enforcement officers could adversely affect the inquiring attorney's zeal in conducting such cross-examination.

Id. Other jurisdictions have likewise been persuaded that "the nature and duties of a public prosecutor are inherently incompatible with the obligations of a criminal defense counsel." People v. Rhodes, 524 P.2d 363, 367 (Cal. 1974); cf. Goodson v. Peyton, 351 F.2d 905, 908-909 (4th Cir. 1965); In re Darren T. Cole, 738 N.E.2d 1035, 1037 (Ind. 2000); State v. Brown, 853 P.2d 851, 857-859 (Utah 1992); Landa v. Rath, 568 N.Y.S.2d 278, 280 (N.Y. Sup. Ct. 1991).

In particular, we find the observations of the Supreme Court of California in Rhodes, 524 P.2d at 365, to be instructive. In Rhodes, the court addressed the propriety of a defendant's representation in a state criminal prosecution by a municipal attorney whose prosecutorial responsibilities were limited to violations of municipal ordinances. The court indicated that, if the prosecutorial responsibilities of the defendant's attorney were not limited to violations of municipal ordinances, there would be a "direct conflict." Id. In any event, the court observed,

> [i]n the situation confronting a city attorney acting as a defense counsel there inevitably will arise a struggle between, on the one hand, counsel's obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor's natural inclination not to anger [law enforcement personnel] whose assistance he relies upon in carrying out his prosecutorial responsibilities. Such a conflict of interest would operate to deprive

a criminal defendant of the undivided loyalty of defense counsel to which he is entitled.

Id. at 366. The court added in dicta that, because the interests of the criminal justice system as well as those of the defendant were implicated by a city attorney's representation of criminal defendants, "the consent of the defendant alone is not sufficient to render such representation proper." Id. at 366 n. 8.

In short, an actual conflict of interest prohibited McDaniel's representation of the appellant, and the trial court did not abuse its discretion in refusing the appellant's waiver of that conflict. In this case, McDaniel attempts to defend the appellant in the criminal court of the county in which he holds the title of assistant district attorney general. McDaniel repeatedly maintains that he is the prosecutor for the Town of Collierville and that his title of assistant district attorney general is a "mere formality," assumed solely for "insurance purposes." However, counsel overlooks the source of his need for additional insurance, namely the delegation by the Shelby County District Attorney General to McDaniel of authority to prosecute violations of state laws committed within the Town of Collierville. See Tenn. Code Ann. §8-7-103(7) (Supp. 2001); State v. Taylor, 653 S.W.2d 757, 760 (Tenn. Crim. App. 1983). Having concluded that McDaniel's title as an assistant district attorney general is more than a mere formality, we decline to disturb the trial court's ruling.

## III. Conclusion

Finding no abuse of discretion, we affirm the judgment of the trial court.

NORMA McGEE OGLE, JUDGE